UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAKISHA MARIE SHEFFIELD,

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

       Defendant.

_____/

Case No. 2:17-cv-14058
District Judge Mark A. Goldsmith
Magistrate Judge Anthony P. Patti

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 11), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 12) and AFFIRM THE COMMISSIONER'S DECISION

**I.     RECOMMENDATION**: For the reasons that follow, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 11), **GRANT** Defendant's motion for summary judgment (DE 12), and **AFFIRM** the Commissioner's decision.

**II.    REPORT**

       Plaintiff, Lakisha Marie Sheffield, brings this action under 42 U.S.C. §§ 405(g), 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application(s) for supplemental security income (SSI) benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (DE

11), the Commissioner's cross-motion for summary judgment (DE 12), and the administrative record (DE 9).

### A. Background and Administrative History

Plaintiff alleges her disability began on March 1, 2011, at the age of 26. (R. at 152, 159.) Plaintiff's August 2014 disability report, which was completed by her attorney, Joshua Moore, lists several conditions (depression, anxiety, insomnia, anger control disorder, seizure disorder, epilepsy, asthma, herpes I and II, and bronchitis) that limit her ability to work. (R. at 194-195; *see also* R. at 209.) Her applications were denied on February 11, 2015. (R. at 55-71, 75-83.)

In February 2015, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). (R. at 84-86.) On June 9, 2016, ALJ Ena Weathers held a hearing, at which Plaintiff and a vocational expert (VE), Susan Rowe, testified. (R. at 28-54.) ALJ Weathers issued an opinion on September 26, 2016, which determined that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 8-27.)

In November 2016, Plaintiff submitted a request for review of the hearing decision/order. (R. at 137-140.) However, on October 20, 2017, the Appeals Council denied Plaintiff's request for review. (R. at 1-7.) Thus, ALJ Weathers's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on December 17, 2017. (DE 1.)[1]

### B. Plaintiff's Medical History

The administrative record contains approximately 914 pages of medical records, which were available to the ALJ at the time of her September 26, 2016 decision. (R. at 27, 276-1189 [Exhibits 1F – 20F].) These materials be discussed in detail, as necessary, below.

### C. The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 11, 2014, the application date. (R. at 13.) At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: schizoaffective disorder, bilateral knee pain, lumbar degenerative disc disease, chronic pain syndrome, learning disability, obesity, post-traumatic stress disorder, major depressive disorder and a seizure disorder. (*Id*. at 13-14.) At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed

---

[1] Contrary to Fed. R. Civ. P. 5.2(a)(1), Plaintiff's complaint, filed by her current counsel, lists Plaintiff's full social security number. (DE 1 at 1 ¶ 2.) *See also* Administrative Order No. 07-AO-030 (E.D. Mich.). This is all too common in Social Security cases and should be avoided.

impairments. (*Id*. at 14-17.) **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[2] and determined that Plaintiff had the RFC:

> . . . to perform light work as defined in 20 CFR 416.967(b) except she can never climb ladders, ropes, or scaffolds. She can occasionally stoop, crouch, and crawl. She can occasionally climb ramps and stairs. She must avoid concentrated exposure to hazards; including work at unprotected heights. *She can perform simple, routine, repetitive non-tandem tasks without strict production demands.* She has the ability to change from standing to seated or vice versa for up to two minutes every hour to two hours without interference with work product. *She can have occasional interaction with coworkers. She can have superficial to no interaction with the general public.*

(*Id*. at 17-20 (emphases added).) At **Step 4**, the ALJ determined that Plaintiff had no past relevant work. (*Id*. at 20.) At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (*Id*. at 21-22.) The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since August 11, 2014, the date the application was filed. (*Id*. at 22.)

### D. Standard of Review

---

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E. Analysis

Plaintiff argues that the ALJ "failed to properly assign an RFC that complies with the mental health limitations recognized by the Judge." (*See* DE 11 at 4-5, 15-17.) The Commissioner argues that the ALJ "properly accounted for Plaintiff's mental limitations in the RFC." (*See* DE 12 at 3, 6-8.)

#### 1. Assessing RFC and SSR 96-8p

Social Security Ruling 96-8p provides guidance for assessing RFC in initial claims. It requires a narrative discussion:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must

6

>discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8P (S.S.A. July 2, 1996) (internal footnote omitted).

### 2. The ALJ's mental RFC assessment

As noted above, the ALJ found that Plaintiff's severe impairments included schizoaffective disorder, learning disability, post-traumatic stress disorder (PTSD), and major depressive disorder. (R. at 13.) At Step 3, when concluding that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, the ALJ specifically considered Listing 12.04 (affective disorders), Listing 12.05 (borderline intellectual functioning), and Listing 12.06 (anxiety related disorders). (R. at 14.) Within the Step 3 discussion, the ALJ determined that Plaintiff: (a) had no more than mild restriction in activities of daily living; (b) had moderate difficulties in social functioning; and, (c) had moderate difficulties with regard to concentration, persistence or pace (CPP). (R. at 15-16.)[3] Thus, the ALJ's

---

[3] As the listing explains, "[t]his area of mental functioning refers to the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(E)(3).

7

September 26, 2016 social functioning determination was *more severe* than that of state agency consultant Jerry Csokasy, PhD., dated October 8, 2014, which described Plaintiff's "difficulties in maintaining social functioning" as "mild." (*Compare* R. at 15, 63.)

Then, within the RFC determination, the ALJ assessed the following mental health related limitations:

    (a)    She can perform simple, routine, repetitive non-tandem tasks *without strict production demands*. [*i.e.*, sustained concentration and persistence limitation]

    (b)    She can have occasional interaction with coworkers. [*i.e.*, social interaction limitation]

    (c)    She can have superficial to no interaction with the general public. [*i.e.*, social interaction limitation]

(R. at 17 (emphasis added); *see also* R. at 20, 51-52.) Here, too, the ALJ's social interaction limitations are more severe than Dr. Csokasy's opinion that Plaintiff did not have social interaction limitations. (*Compare* R. at 17, R. at 69.) Moreover, within his conclusions about "sustained concentration and persistence limitations," Dr. Csokasy opined that Plaintiff was "not significantly limited" in his "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods[,]" elaborating that Plaintiff

"would have difficulty completing complex tasks on a sustained basis[.]" (R. at 68-69.)[4]

### 3. CPP-related limitation

Plaintiff is mistaken in her argument that "the only limitation in the RFC which the ALJ related to Plaintiff's mental health severe impairments was that she can have occasional interaction with coworkers, and superficial to no interaction with the public." (DE 11 at 15-16.) As noted above, the RFC included the further limitation that Plaintiff "can perform simple, routine, repetitive non-tandem tasks without strict production demands." (R. at 17.) Perhaps Plaintiff or her counsel missed this fact, given that this sentence is sandwiched between the environmental and exertional limitations, both within the RFC statement itself and within the ensuing narrative. (R. at 17, 20.) Nonetheless, the ALJ did not fail "to incorporate any limitations related to the acknowledged difficulties with [CPP] . . . [,]" nor did the ALJ fail "to provide any limitations other than those for human contact[.]" (DE 11 at 16.)

Plaintiff also contends that her mental health limitations "are far more severe than the RFC suggests," but this statement is based on the ALJ's acknowledgment

---

[4] In assigning "partial weight" to Dr. Csokasy's opinion, the ALJ cited Plaintiff's September 17, 2014 function report (R. at 218-228), emergency department records from Beaumont Hospital – Grosse Pointe (R. at 789-880), hospital records from Henry Ford Hospital (R. at 885-1125), and office treatment records from Michigan Neuro Associates (R. at 1126-1189). (R. at 19.)

of "that severity" but failure to accommodate it. (R. at 16-17.) As shown above, Plaintiff's position – that there is no limitation related to her moderate difficulties with CPP – directly conflicts with the express language of the ALJ's decision, which provides for "simple, routine, repetitive non-tandem tasks without strict production demands." (R. at 15, 17.)

To the extent, if at all, that Plaintiff is simply asking the Court to reweigh the evidence and remand the case for a new RFC, the narrow scope of judicial review does not include re-weighing evidence or substituting the Court's judgment for that of the ALJ. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Bass*, 499 F.3d at 509. Likewise, if Plaintiff intended to argue that the CPP-related limitation assessed does not account for her moderate limitations in that area, Plaintiff has not established a more restrictive RFC than that found by the tribunal – a burden that is hers to meet. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five."). In fact, Plaintiff's argument does not contain any express citations to Plaintiff's medical records. (*See* DE 11 at 15-17.) *Berry v. Comm'r of Soc. Sec.*, No. 16-10548, 2016 WL 7664225, at *11 (E.D. Mich. Dec. 8, 2016) (Morris, M.J.) ("Berry gives no indication what additional restrictions might be necessary to accommodate his conditions, but merely mentions the possibility that the ALJ *could have* included

more restrictive limitations in his RFC assessment.") (emphasis in original), *report and recommendation adopted*, No. 16-10548, 2017 WL 67458 (E.D. Mich. Jan. 6, 2017) (Rosen, J.). Plaintiff vaguely argues that, "[t]he ALJ decision is not within the substantial evidence standard." (DE 11 at 16.) It is quite unclear from the rest of her argument exactly how that is.

F.  **Conclusion**

Contrary to Plaintiff's argument that the ALJ failed "to incorporate any limitations related to the acknowledged difficulties with [CPP] . . . [,]" (DE 11 at 16), the ALJ's mental RFC assessment contains a CPP-related limitation. Therefore, Plaintiff has not shown her entitlement to the relief she requests, which is reversal or remand "in order to obtain an RFC that comports with the severe impairment findings and the finding of moderately impaired [CPP]." (DE 11 at 17.)

Plaintiff has the burden of proof on her statement of error, and she has not shown legal error that would upend the ALJ's decision. For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 11), **GRANT** Defendant's motion for summary judgment (DE 12), and **AFFIRM** the Commissioner of Social Security's decision.

### III.     PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  February 1, 2019                    s/*Anthony P. Patti*
                                            Anthony P. Patti
                                            UNITED STATES MAGISTRATE JUDGE